In the Matter of the Application of WILLIAM SOHMER, as Comptroller of the State of New York, Respondent, for an Order Transferring Certain Moneys and Securities Paid into Court from the COLUMBIA-KNICKERBOCKER TRUST COMPANY OF THE COUNTY OF NEW YORK, Appellant, to the City Chamberlain of the City of New York.

First Department, December 6, 1912.

Code of Civil Procedure — section 744a construed — when moneys and securities not paid into court — trust — when State Comptroller not entitled to order transferring funds from trust company to city chamberlain of the city of New York.

An act of the Legislature, authorizing the sale of certain lands devised by will, and also the right, title and interest of the devisees in the lands under water, also provided that the referee should receive the proceeds of the sale and after making certain payments therefrom the court should "direct the remainder of said proceeds, so far as the same shall not belong absolutely to any party to the proceeding to be placed for safe

keeping, distribution and investment, * * * in the custody of a proper person or persons or a trust company to be designated by the court," and further directed "that the principal of said fund shall not be withdrawn from such custody and distributed until the life interest of the life tenant named in the said third paragraph of the said will shall have terminated, and then only upon order of the court upon notice to all persons having any interest in the said fund."

*Held,* that a trust company, designated as a custodian of the proceeds of the sale by the court, pursuant to said statute, received the funds as trustee, and not as "moneys and securities paid into court," within the meaning of section 744a of the Code of Civil Procedure;

That, therefore, the State Comptroller is not entitled to an order under said section directing the transfer of the funds and securities from the trust company to the chamberlain of the city of New York.

DOWLING, J., dissented.

APPEAL by the Columbia-Knickerbocker Trust Company from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 8th day of October, 1912, granting the motion of the petitioner, the Comptroller of the State of New York, and directing the transfer of certain funds and securities from the Columbia-Knickerbocker Trust Company to the city chamberlain of the city of New York.

*Julien T. Davies* [*Herbert Barry* with him on the brief], for the appellant.

*Robert P. Beyer,* for the respondent.

SCOTT, J.:

The order appealed from was made under authority of section 744a of the Code of Civil Procedure, enacted by chapter 182 of the Laws of 1908. That section reads as follows:

"§ 744-a. The Comptroller may examine the books, accounts and vouchers of every bank and trust company in the State, in anywise relating to moneys and securities paid into court, under an order of any court of record; and where the same has not been paid to the chamberlain of the city of New York or to any county treasurer of the State, the Comptroller upon an application duly made shall be entitled to an order directing the payment and transfer of all such money and securities, from any of such banks and trust companies, to the treasurer

of the proper county, and in the city of New York to the city chamberlain."

The validity of the enactment is not open to question. (*Matter of Walsh*, 204 N. Y. 276.) The question involved in the present appeal is whether or not the funds and securities affected by the order appealed from are "moneys and securities paid into court" within the purview of the section. The *Walsh* case affords no aid towards the solution of this question, as it did not attempt to define what funds were to be considered as moneys paid into court.

It is first necessary to consider how these funds came into the hands of the appellant. This is set forth in the moving papers as follows: Some time prior to the year 1896 one George Bruce Brown died, leaving a last will and testament whereby he disposed of certain real estate in the county of Westchester as follows: "*Third*. I give and devise to my said wife, Ruth Arabella Brown, my country place in the town of Westchester, County of Westchester and State of New York, consisting of about one hundred and thirty-five acres of land, more or less, being all my real estate in said town, with the mansion wherein I reside in summer and the various stables and other houses and buildings thereon, for and during the term of her natural life, and from and after her death, I give and devise the same, share and share alike, to my sons George McKesson Brown, William Bruce Brown, and David Loney Brown as survivor or survivors, their heirs and assigns forever, subject to the following provisions, viz.: If either of my said sons shall die during the life of my said wife, leaving lawful issue him surviving, it is my will that said issue shall take the interest or share to which my said son so dying would have been entitled had he survived my said wife, the said issue to take *per stirpes* and not *per capita*."

For some reason, probably on account of the difficulty in making title, an act of the Legislature was procured to be passed which was known as chapter 110 of the Laws of 1896. Its title was as follows: "An act to authorize the sale of certain land, formerly in the town and county of Westchester, and now in the city and county of New York, devised by George Bruce Brown to Ruth A. Bruce-Brown and others, and also the right,

title and interest of the said devisees in the lands under water and between high and low water mark, adjacent thereto, granted by the People of the State of New York."

The act authorized the Supreme Court to entertain a petition or petitions to effect a sale of the real estate of the decedent and to determine the interests of the several parties therein. The 8th section made the following provisions with reference to the disposition of the proceeds of sale:

"§ 8. Such referee shall receive the proceeds of sale and shall pay thereout * · * *; and the court shall direct the remainder of said proceeds, so far as the same shall not belong absolutely to any party to the proceeding, to be placed for safe keeping, distribution and investment, subject to the provisions contained in the said third paragraph of the said will, in the custody of a proper person or persons or a trust company, to be designated by the court, with proper provisions to enable any person entitled to the income of such fund to draw the same from such custodian, as such income shall, from time to time, accrue, less the expenses of managing the same, including reasonable commissions to the custodian, and with a further provision that the principal of said fund shall not be withdrawn from such custody and distributed until the life interest of the life tenant named in the said third paragraph of the said will shall have terminated, and then only upon order of the court upon notice to all persons having any interest in the said fund."

Thereafter proceedings were instituted, under said act, in the Supreme Court, which resulted in a judgment entered on November 12, 1906.

The following are the pertinent and material provisions of the order: *Third.* "That the referee pay and assign to the said trust company hereinbefore designated, which is hereby designated as custodian of the fund, a sum in cash and an undivided interest in the said purchase money bond and mortgage which together aggregate a sum equal to one-third of the net principal of the proceeds of sale, and that during the lifetime of the said Ruth A. Bruce Brown, the said trust company invest and keep invested the said cash and the said undivided interest in the said bond and mortgage and the proceeds, and that until the majority of the said David Loney Bruce Brown,

on the 13th day of August, 1910, the said trust company pay the income of the said one-third of the net principal, less its reasonable fees and commissions, in installments as may be convenient, but not less frequently than semi-annually, to Ruth A. Bruce Brown as testamentary guardian of David Loney Bruce Brown; and that after the majority of the said David Loney Bruce Brown and during the life of the said Ruth A. Bruce Brown, the said trust company pay the said income in installments as aforesaid to the said David Loney Bruce Brown his legal representatives or assigns * * *; and that on the death of the said Ruth A. Bruce Brown, the said one-third be subject to the general directions hereinafter contained." There are other provisions in the order similar in character, in all of which the Knickerbocker Trust Company is custodian of that part of the fund which is turned over to it.

Quoting further from the said order: " and it is Further Ordered, that all the said net principal of the proceeds of sale, so far as the same shall not belong absolutely to any party to this proceeding, shall remain with the said trust company hereinbefore designated as custodian of the fund, for safekeeping, distribution and investment during the lifetime of the said Ruth A. Bruce Brown, subject to the provisions contained in the third paragraph of the Will of George Bruce Brown, by which said provisions the said George Bruce Brown gave and devised to his wife, the said Ruth A. Bruce Brown (therein named as Ruth Arabella Brown) the uplands included in the sale in this proceeding, for and during the time of her natural life, and from and after her death, share and share alike to the said testator's sons hereinbefore mentioned, George McKesson Brown, William Bruce Brown and David Loney Bruce Brown (therein named as George McKesson Brown, William Bruce Brown and David Loney Brown), as the survivor or survivors, their heirs and assigns forever, subject to the provision that if either of the testator's said sons should die during the life of the testator's said wife, leaving lawful issue him surviving, such issue to take the interest or share to which the son so dying would have been entitled had he survived the testator's said wife, the said issue to take *per stirpes* and not *per capita*, and also subject to the further provisions contained in this order as

to the disposition of the said net principal of the proceeds of sale by reason of the rights of the parties therein and of the aforesaid grant and release by the said Ruth A. Bruce Brown of all her interest therein to the petitioner George McKesson Brown and the infants William Bruce Brown and David Loney Bruce Brown; and that so far as the same shall not belong absolutely to any party to this proceeding, the said net principal of the proceeds of sale shall not be withdrawn from such custody and distribution until the life interests therein, dependent upon the life of the said Ruth A. Bruce Brown, shall have terminated and then only upon order of the court upon notice to all persons having any interest in the said fund, and it is

"Further Ordered, that the said fund shall, while in the custody of the said trust company, or of any custodian substituted therefor by the court, retain its legal character of real estate for the purposes of the determination of the rights of all persons entitled to the capital, income or accumulations thereof."

The moneys now sought to be turned over to the city chamberlain were received by the Knickerbocker Trust Company, pursuant to the terms of the foregoing statute and order. Obviously, the nature of the holding by the appellant must be found in the act of the Legislature, because it is from that alone that the court derived its power and authority. We are of the opinion that the trust company received the funds as trustee. It is true that the word "trustee" is not used in the statute which describes the person to be designated by the court as "custodian," but it is too well settled to require argument or the citation of authorities that no particular form of words is necessary to create a trust. The elements of a trust are all to be found in the statute. There is a *res* or subject-matter; there is provision for the designation of a person to hold and administer it until the time shall arrive for the payment over to the persons then entitled to receive it; there is an express declaration that the principal of the fund shall not be withdrawn from such custody and distributed until the life interest of the life tenant shall have terminated, and there is an obligation imposed upon the custodian to pay the income to the persons entitled thereto. It is difficult to see how the Legislature could have framed a provision more aptly

calculated to create a trust, and to provide for a trustee to hold, administer, manage and distribute the fund. Nowhere in the act is there to be found any provision that the proceeds of the sale shall be paid into court, or that the court itself shall assume its management and control. There are numerous cases in which the Legislature has especially provided that moneys shall be "paid into court." (See Code Civ. Proc. §§ 732, 1538, 1563, 1565, 1582; Greater N. Y. Charter [Laws of 1901, chap. 466], § 1441.) All such moneys undoubtedly fall within the purview of section 744a of the Code of Civil Procedure. But this is distinctly not such a case and, as we consider, falls neither within the language nor the intent of that section. It is worthy of notice that it merely happened that the court exercised its discretion to select a trust company as custodian of the fund. It might, under the statute, have selected a natural person or persons, in which case it would have been perfectly apparent that section 744a could have no application, for its operation is limited by the very terms of the statute to funds held by banks and trust companies. Yet the character in which the appellant holds the funds is no different because it happens to be a trust company than it would have been if the custodian had been a natural person. The section under consideration may be very beneficial in its operation within the limits placed on that operation by the Legislature. Of that we are not called upon to express an opinion. But we are certainly not justified in attempting by a strained construction to extend its scope beyond its obvious limits. It will not do to say, as the Attorney-General does in his brief, that the trust company is not aggrieved by the order, and has no status to appeal. On the contrary, the trust company stands as one to whom has been confided a trust which it is now sought to destroy, at least so far as its trusteeship is concerned. It certainly has a standing, as well as a duty, to resist the attempt in the orderly methods provided by law.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion denied.

INGRAHAM, P. J., MCLAUGHLIN and CLARKE, JJ., concurred; DOWLING, J., dissented.

Order so far as appealed from reversed, with ten dollars costs and disbursements, and motion denied.